IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRADLEY AMMERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-25-00539-JD |
| ) | |
| GOLDMAN SACHS BANK USA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court are Defendant Goldman Sachs Bank USA's ("GS Bank") Motion to Compel Arbitration [Doc. No. 9], GS Bank's Motion to Deem Defendant's Motion to Compel Arbitration Confessed ("Motion to Deem Confessed") [Doc. No. 12], and Plaintiff Bradley Ammerman's Motion to Dismiss [Doc. No. 13].

For the reasons stated below, the Court GRANTS GS Bank's Motion to Compel Arbitration and GRANTS GS Bank's Motion to Deem Confessed to the extent it relates to factual allegations. The Court DENIES Plaintiff Ammerman's Motion to Dismiss. The Court STAYS this action pending the outcome of the arbitration proceeding.

I.     **BACKGROUND**

On April 11, 2025, Bradley Ammerman sued GS Bank in Oklahoma County District Court, alleging GS Bank violated § 623 of the Fair Credit Reporting Act ("FCRA"). Notice of Removal, Ex. 3 at 4 [Doc. No. 1-3]. Specifically, the form affidavit Ammerman filed in small claims court states GS Bank "is indebted to [Ammerman] in the sum of $1,000 for consumer protection afforded by FCRA § 623[.] Disputed alleged

debt and [GS Bank] failed to report dispute to the credit bureaus." *Id.* GS Bank removed to this Court based on this Court's federal question jurisdiction under 28 U.S.C. § 1331. *See* Notice of Removal ¶ 2 [Doc. No. 1]. GS Bank then answered the complaint. [Doc. No. 6].

On July 10, 2025, GS Bank filed the Motion to Compel, contending Ammerman's claims are subject to mandatory arbitration. Motion to Compel Arbitration at 1. Ammerman did not timely respond. GS Bank requests the Court "stay this action, pending the resolution of arbitration." *Id.* at 13. GS Bank also requests the Court "deem the Arbitration Motion confessed." Motion to Deem Confessed at 2.

After GS Bank moved to compel arbitration, on August 1, 2025, Ammerman filed an identical claim in state court. *See Bradley Ammerman v. Goldman Sachs Bank*, Case No. SC-2025-15636 (Okla. Cnty. Dist. Ct.), available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=SC-2025-15636&cmid=4465698 (last accessed Jan. 17, 2026).[1] Ammerman then moved for dismissal of the instant case under Federal Rule of Civil Procedure 41(a)(2). Motion to Dismiss [Doc. No. 13]. The Court ordered expedited response briefing from GS Bank, which it timely filed in opposition to dismissal. [Doc. Nos. 14–15]. Ammerman then attempted to file both an amended complaint and a response to GS Bank's original

---

[1] Ammerman's duplicative state court claim has since been dismissed for "federal preemption." *See id.* (docket entry Sept. 16, 2025).

Motion to Compel Arbitration, [Doc. Nos. 16–17], and both were struck for procedural non-compliance, [Doc. Nos. 18–19].[2]

## II.  ANALYSIS

The Court will first analyze Ammerman's Motion to Dismiss, followed by GS Bank's motions. As outlined below, the Court denies Ammerman's Motion to Dismiss and grants GS Bank's motions.

### A.  Dismissal without prejudice would unfairly prejudice GS Bank.

When a defendant has filed an answer, the "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Such dismissal "is within the sound discretion of the court." *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993). "When considering a motion to dismiss without prejudice, 'the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties.'" *Id.* (quoting *Barber v. Gen. Elec. Co.*, 648 F.2d 1272, 1275 (10th Cir. 1981)).

---

[2] The Court explained that the response to the Motion to Compel Arbitration was untimely and not filed in accordance with Local Civil Rule 7.1(g). The Motion to Compel Arbitration was filed on July 10, 2025, making the response due on July 31, 2025. Ammerman did not attempt to respond until September 26, 2025. [Doc. No. 16]. The Court told Ammerman he could file a motion seeking leave to file his response out of time. [Doc. No. 18]. When Ammerman attempted to do so, *see* [Doc. No. 20], he still did not comply with the Court's rules and procedures, and the Court struck his motion and told him he could refile his motion in compliance with the rules and procedures. [Doc. No. 22]. He never refiled a motion seeking leave. The Court cautioned Ammerman in an order of July 10, 2025, that although he is proceeding pro se, he "is bound by the same rules and requirements as any other litigant[.]" Order [Doc. No. 11]. Nonetheless, this order addresses the arguments raised in Plaintiff's stricken response regarding whether a valid contract exists and whether the dispute falls within the scope of the arbitration clause. *See* [Doc. No. 20-1].

3

"[I]n determining the 'legal prejudice' the opposing party will suffer if a motion to dismiss without prejudice is granted," district courts should consider the following factors: (1) "'effort and expense of preparation for trial,'" (2) "'excessive delay and lack of diligence on the part of the [movant] in prosecuting the action,'" and (3) "'insufficient explanation for the need to take a dismissal.'" *Clark*, 13 F.3d at 1411 (alterations in original) (quoting *Huskey v. Nat'l Liquid Blasting Corp.*, Civ. A. No. 85-2531, 1987 WL 276128, at *1 (D. Kan. Aug. 7, 1987)).

Under the first factor, GS Bank's efforts and expenses so far consist of GS Bank's: (1) Answer of five pages, including twelve affirmative defenses; (2) Motion to Compel Arbitration with thirteen pages of substantive briefing and thirty pages of exhibits, including a declaration in support of the motion, the account agreement, and an account statement; (3) Motion to Deem Confessed with three pages of substantive briefing and an exhibit; and (4) response to Ammerman's Motion to Dismiss with five pages of substantive briefing. [Doc. Nos. 6, 9, 12, 15].[3] In all, without considering GS Bank's efforts and expenses in state court, GS Bank has submitted numerous pages of substantive legal work so far in this case. This is far greater than what the court in *Clark* considered "an extremely limited amount of work . . . prior to [Plaintiff]'s motion to dismiss." *Clark*, 13 F.3d at 1412. Still, GS Bank's time investment does not represent the degree of commitment present "[i]n the face of extensive discovery." *Barber*, 648 F.2d at 1275. Nor has GS Bank expended significant time and resources in the lead up to a

---

[3] The Court does not include GS Bank's initial removal as part of its efforts and expenses.

dispositive hearing. *In re Fairchild*, 969 F.2d 866, 868 (10th Cir. 1992) (concluding the lower court did not err in denying dismissal sought the day prior to a dispositive hearing). However, given the material expenditures GS Bank has incurred so far relative to the amount in controversy, the first factor weighs in GS Bank's favor.

The second factor of excessive delay and lack of diligence also weighs in favor of GS Bank. Ammerman proceeds pro se and thus his filings receive "a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). This is "especially" so in the presence of "highly technical legal requirements" where "strict enforcement . . . would result in a loss of the opportunity to prosecute a claim on the merits." *Clark*, 13 F.3d at 1412. But courts have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted) (also explaining that "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

Here, Ammerman's failure to timely respond to GS Bank's Motion to Compel Arbitration is not a "highly technical legal requirement" akin to the exhaustion of state remedies requirements considered in *Clark*, 13 F.3d at 1412. Local Civil Rule 7.1(g) states a straightforward response deadline of "21 days," with which Ammerman failed to comply. Moreover, the Court warned Plaintiff that he was subject to the Local Civil Rules and timeliness requirements on July 10, 2025, the same date GS Bank filed its Motion to Compel Arbitration. *See* Order [Doc. No. 11]. Ammerman filed his motion to dismiss on or around the same day his duplicative state court complaint was dismissed for a "federal

5

preemption clause," evincing a possible desire to skirt the Court's valid removal jurisdiction over this case. *Compare Bradley Ammerman v. Goldman Sachs Bank*, Case No. SC-2025-15636 (Okla. Cnty. Dist. Ct.) (filed Aug. 1, 2025), available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=SC-2025-15636&cmid=4465698, *with* Motion to Dismiss [Doc. No. 13] (filed on Sept. 16, 2025).[4] Ammerman's failure to comply with straightforward deadlines and his attempts to evade federal jurisdiction are quintessential "excessive delay[s]" and deficits in "diligence," weighing this factor in GS Bank's favor. *Clark*, 13 F.3d at 1411.

For the third factor, the sufficiency of the movant's explanation for the need to take a dismissal, Ammerman offers that he "no longer wishes to pursue this action." Motion to Dismiss at 1. Yet Ammerman also requests dismissal without prejudice. *Id.* If Ammerman does not "wish[] to pursue this action," *id.*, a without prejudice dismissal is not a "term[] that the court considers proper" considering the above pattern of litigation. Fed. R. Civ. P. 41(a)(2). To request a without prejudice dismissal on this rationale implies that Ammerman "no longer wishes to pursue this action," but only for now. Motion to Dismiss at 1. Considering Ammerman's pattern and timing of duplicative filings, the

---

[4] The Court takes judicial notice of Ammerman's filing of this duplicative complaint in state court. *United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (taking judicial notice of court documents filed in related proceedings); *see also St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (recognizing that federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

Court finds Ammerman's explanation insufficient and weighs the third factor in favor of GS Bank.

For these reasons, the Court DENIES Ammerman's Motion to Dismiss.

### B. The Court deems confessed the contents of GS Bank's Motion to Compel Arbitration.

Under Local Civil Rule 7.1(g), "[a]ny motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed." On July 10, 2025, the Court issued an order informing Ammerman that "[e]ven though [he] is proceeding pro se, [he] is bound by the same rules and requirements as any other litigant, including the Local Civil Rules," and that "[m]otions not properly or timely responded to may be deemed confessed by the Court." Order [Doc. No. 11].

Ammerman failed to respond to GS Bank's Motion to Compel Arbitration. As Ammerman did not attempt to respond until September 26, 2025 (more than 50 days after his response deadline), and never properly sought leave of the Court to respond out of time, *see supra* n.2, the Court deems confessed the factual representations of GS Bank's Motion to Compel Arbitration. The Court grants GS Bank's Motion to Deem Confessed to this extent.

But even though the factual representations of GS Bank's Motion to Compel Arbitration are deemed confessed, the Court must still "determine whether the parties agreed to arbitrate th[is] dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Jackson v. Carter*, No. CIV-23-1048-G, 2024

7

WL 2000666, at *1–2 (W.D. Okla. May 6, 2024) (same). The Court proceeds to examine this contract formation question, starting with the agreement's choice of law provision.

### C. Oklahoma law mandates application of the parties' Utah choice of law provision to assess arbitration agreement formation.

In considering a motion to compel arbitration, the Federal Arbitration Act ("FAA") requires courts "make an order directing the parties to proceed to arbitration" when the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. The question of whether an arbitration agreement is validly formed falls under state law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . apply ordinary state-law principles that govern the formation of contracts.").

The question then becomes *which* state law to apply in this case, as the parties' agreement contains a Utah choice of law clause:

> **GOVERNING LAW**
> This Agreement is entered into between you and us in the State of Utah and we extend credit to you from Utah. This Agreement and your Account will be governed by and construed in accordance with federal law and any applicable laws of the State of Utah without regard to rules concerning conflicts of law or choice of law.

Motion to Compel Arbitration, Ex. 1 at 21 [Doc. No. 9-1].[5] Thus, the parties contracted to have Utah law govern the customer agreement.

---

[5] GS Bank's Motion to Compel Arbitration designates the "Declaration of Jeffrey Adams in Support of Motion to Compel Arbitration" as "Exhibit 1." Motion to Compel Arbitration, Ex. 1 at 2–5 [Doc. No. 9-1]. The "Apple Card Customer Agreement," which

8

"To decide the effect of the contractual choice-of-law clause, we look to the forum state's choice-of-law rules," in this case, those of Oklahoma. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007). In Oklahoma, "a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement is sought." *Berry & Berry Acquisitions, LLC v. BFN Props. LLC*, 2018 OK 27, ¶ 13, 416 P.3d 1061, 1068. To be clear, the question here is whether Utah's rules governing *formation* violate Oklahoma's strong public policy. The Court is not concerned with whether Utah's arbitration agreement *enforcement* laws violate Oklahoma's strong public policy, as the FAA "pre-empts application of state laws which render arbitration agreements unenforceable." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 472 (1989).

While both Oklahoma and Utah have uniform acts addressing arbitration agreements, both pertain to the enforceability of arbitration agreements rather than to the contract principles undergirding formation. Utah Code Ann. § 78B-11-107(1) ("An [arbitration] agreement . . . is valid . . . except upon a ground that exists at law or in equity for the revocation of a contract."); 12 Okla. Stat. § 1857 (declaring arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract"). The Court must "apply ordinary state-law principles that govern the formation of contracts to determine whether a party has

---

is referenced and discussed in Adams's Declaration, is then nested within "Exhibit 1" at pages 7–25.

agreed to arbitrate a dispute." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013).

GS Bank directs the Court to Utah's statute of frauds regarding credit agreements. Motion to Compel Arbitration at 8; Utah Code Ann. § 25-5-4(2)(e). Strictly speaking, a statute of frauds governs contract enforcement, not formation—but Utah appellate authorities have invoked § 25-5-4(2)(e) for the proposition that use of a credit card following receipt of the agreement can constitute acceptance. *MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah Ct. App. 2006). The Utah statute states:

> A credit agreement is binding and enforceable . . . if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e).

Likewise, Oklahoma's basic contracting statute lays out the well-known requirements of mutual assent and consideration. 15 Okla. Stat. § 2. And Oklahoma appellate courts have upheld credit card agreements providing for acceptance by use. *Discover Bank v. Worsham*, 2008 OK CIV APP 6, ¶¶ 11–12, 176 P.3d 366, 368; *see also Discover Bank by SA Discover Fin. Servs., Inc. v. Harris*, 2004 OK CIV APP 72, ¶ 2, 99 P.3d 730, 731 (implicitly approving credit agreement acceptance via use). This means Utah's state contract formation principles do not violate Oklahoma's strong public policy.

Utah also has a substantial relationship to Defendant GS Bank, as GS Bank is a "New York State chartered bank with . . . domestic branches located in Salt Lake City,

10

Utah, and Draper, Utah." Motion to Compel Arbitration, Ex. 1 ¶ 4. This is a "nexus to the state of [Utah], thus providing sufficient justification for the parties' [Utah] choice-of-law provision." *Berry & Berry Acquisitions*, 2018 OK 27, ¶ 14, 416 P.3d at 1068. And "[n]othing in this record demonstrates that the parties' contractual choice of law should not be given effect as written." *Williams v. Shearson Lehman Bros., Inc.*, 1995 OK CIV APP 154, ¶ 17, 917 P.2d 998, 1002. Therefore, the Court will apply Utah law to determine whether the parties agreed to arbitrate this dispute.

### D. The parties formed a valid contract, including an agreement to arbitrate disputes.

Ammerman has confessed the facts of GS Bank's Motion to Compel Arbitration. GS Bank represents (1) that it "provided Plaintiff with the Agreement at the time Plaintiff applied for the Account," Motion to Compel Arbitration at 9; (2) that "GS Bank would not have issued the Account if Plaintiff had not accepted the terms of the Agreement prior to submitting his application," *id.*, Ex. 1 ¶ 6; and (3) that "Plaintiff used the Account to make purchases," *id.* at 9, Ex. 1 ¶ 10. GS Bank also states that Ammerman did not exercise his right to opt-out of the arbitration agreement. *Id.* at 5, Ex. 1 ¶¶ 7–9.

Deeming these factual allegations confessed, the Court finds (1) Ammerman received a copy of the agreement, (2) he accepted the agreement by using the account, and (3) Ammerman did not opt-out of the arbitration agreement. These facts meet Utah's requirements for a validly-formed credit agreement. Utah Code Ann. § 25-5-4(2)(e); *Goodman*, 140 P.3d at 592.

The remaining question is whether the instant dispute falls within the scope of the arbitration agreement.

### E. Ammerman's claims are within the scope of the arbitration provision.

An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Doubts regarding a dispute's arbitrability "should be resolved in favor of coverage." *Id.*

The "Arbitration Provision" of the "Apple Card Customer Agreement" covers, in relevant part, claims "arising from or relating to: (i) this Agreement, your Account or your relationship with us; (ii) any servicing of your Account by our agents or service providers; . . . (v) credit bureau reporting or debt collection on or related to your Account . . . ." Motion to Compel Arbitration, Ex. 1 at 24.[6]

Ammerman complains of alleged wrongs in GS Bank's failure to report disputes to credit bureaus. Notice of Removal, Ex. 3 at 4. His allegations plainly "relat[e] to" both Ammerman's "Account" and "credit bureau reporting." Motion to Compel Arbitration, Ex. 1 at 24; *see also id.* (defining "claim" to mean, among other things, claims, disputes, or controversies based upon contract, tort, constitution, statute, common law, or equity).

---

[6] Although broad in scope, arbitration agreements of this kind are valid in the Tenth Circuit. *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1142 (10th Cir. 2014) (reversing district court's denial of motion to compel arbitration where the agreement covered "[a]ny dispute, difference or unresolved question").

12

That Ammerman brings his claims under the FCRA makes no difference as "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Thus, his claims fall within the scope of the arbitration provision and should be arbitrated.

### III.    CONCLUSION

For these reasons, the Court DENIES Ammerman's Motion to Dismiss, GRANTS GS Bank's Motion to Compel Arbitration, REFERS all claims in this matter to arbitration, and STAYS this action pending the outcome of arbitration. The Court further GRANTS GS Bank's Motion to Deem Confessed to the extent it relates to factual representations of GS Bank in the Motion to Compel Arbitration.

IT IS SO ORDERED this 20th day of January 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE